UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JONATHAN ALEXANDER MORRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.: 2:21-cv-00029-LCB** |
| **v.** ) | |
| ) | |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** ) ) ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

On January 8, 2021, Plaintiff Jonathan Alexander Morris filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's adverse action under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Doc. 1). The Commissioner filed an Answer on August 3, 2021. (Doc. 11). Morris filed a Brief in Support of his position on September 17, 2021, (Doc. 13), and the Commissioner filed a Response on November 16, 2021. (Doc. 16). Morris filed a Reply Brief on November 30, 2021. (Doc. 17). The appeal has been fully briefed and is ripe for review. For the following reasons, the Commissioner's final decision is **AFFIRMED**.

## I.      Background

Morris filed an application for social security disability benefits and supplemental social security income benefits on April 9, 2019. (Tr. 158-160, 161-166).[1] His claim was denied on June 7, 2019. (Tr. 71-75). After his claim was denied, Morris requested a hearing before an Administrative Law Judge. (Tr. 80-82). His request was granted, and the hearing was held on May 11, 2020. Morris was represented by counsel at his hearing. (Tr. 27-46). Renee Smith, a Vocational Expert, also testified at the hearing. (Tr. 42-45). The ALJ issued an adverse decision on Morris's claims on June 29, 2020. (Tr. 15-22). Morris then requested review of the ALJ's decision by the Social Security Appeals Council. The Appeals Council affirmed the ALJ's decision on November 9, 2020. (Tr. 1-6). This lawsuit followed.

## II.      The ALJ's Analysis

The ALJ issued a written opinion explaining his decision following the hearing. (Tr. 15-22). In his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. 20 C.F.R. § 416.920(a). In accordance with that standard, each step is followed sequentially and, if it's determined that the claimant is or is not disabled at a particular evaluative, the ALJ will not proceed to the next step.

---

[1] "Tr" denotes the page number assigned in the administrative record filed by the Commissioner on August 3, 2021. *See* (Docs. 11-3 to 11-8).

The first step of the five-step analysis requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Morris had not engaged in substantial gainful activity during the period from his alleged onset date of February 17, 2017. (Tr. 17). Accordingly, the ALJ moved to step two.

At step two, ALJs must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If a claimant does not have a severe impairment, he is not disabled, and the inquiry ends. The ALJ found that Morris had the following severe impairments: "Ménière's disease, sensorineural hearing loss, obesity, and hypertension." (Tr. 17).

The third step of the analysis requires the ALJ to determine whether the claimant's impairments or a combination thereof meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. If not, the ALJ proceeds to the next

step. The ALJ found that Morris's impairments did not meet or equal any of the listed criteria and, therefore, proceeded to step four. (Tr. 18).

Step four of the evaluation requires an ALJ to determine the claimant's residual functional capacity, and whether she has the RFC to perform the requirements of any past relevant work. 20 C.F.R. § 416.920(f). The term "past relevant work" means work performed within the last 15 years before the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. The ALJ found that Morris had the RFC to perform his past work as a pharmacy technician. (Tr. 21). Therefore, the ALJ concluded Morris was not disabled as defined by the Social Security Administration.

### III.    Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). "This limited review precludes deciding facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the

record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### IV. Morris's Arguments

Morris presents two issues for review, claiming each constitutes reversible error. (Doc. 13). First, Morris argues that the ALJ's RFC determination was not supported by substantial evidence because he discounted Morris's subjective statements of pain without considering the entire record. Second, Morris contends that the ALJ improperly found that he could return to his prior work at step four because the ALJ failed to properly conduct a function-by-function analysis of his physical capacity and mental functions.

### A. Morris is not entitled to relief on his claim that the ALJ discounted his subjective statements of pain.

While Morris's first issue boils down to a claim that the ALJ discounted his subjective complaints of pain and limitations, his argument is three-fold. First, Morris argues that the ALJ did not articulate reasons for rejecting his subjective allegations and that the objective medical evidence confirms the severity of his subjective complaints. Essentially, Morris argues that the ALJ erred in making a credibility determination against Morris's subjective statements and actions. Ultimately, credibility determinations are the province of the ALJ. *Moore v.*

5

*Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). So long as a credibility determination is clearly articulated and supported by substantial evidence, it will not be disturbed. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

The regulations provide that a claimant's statements about pain or limitations alone are not sufficient to establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ should consider all record evidence, both objective and subjective, to determine the effect of subjective complaints on a claimant's ability to function. 20 C.F.R. §§ 404.1529, 416.929. Generally, when an ALJ supports a finding discrediting a claimant's subjective testimony of symptoms with substantial evidence, the court will affirm the ruling.

First, it is important to note that the ALJ did not find that Morris had no medical impairments. Rather, the ALJ reviewed Morris's medical records and found that they supported a finding that he suffered from the severe impairments of Ménière's disease, sensorineural hearing loss, obesity, and hypertension. (Tr. 17). However, the ALJ, upon review of the entire record, found that the impairments were not as limiting as Morris claimed in his subjective statements. In support of those findings, the ALJ highlighted numerous records showing that Morris's statements about the intensity, persistence, and limiting effects of his symptoms were not supported by the objective medical evidence. (Tr. 19-21). For his Ménière's disease and sensorineural hearing loss, the ALJ cited records from Dr. Stephen

Favrot, Dr. Edwin Boyd, Dr. Dennis Pappas, and Helena Family Medicine where largely unremarkable examinations showed that Morris was able to hear conversational voice and had the ability to communicate, and that conservative treatment through a change in diet had helped control symptoms. (Tr. 19-20). For his hypertension, the ALJ noted that treatment records showed that Morris's high blood pressure is controlled through medication. (Tr. 20). For his obesity, the ALJ noted that neither the claimant nor any treating physician had attributed any limitations to Morris's obesity. *Id.* The ALJ still, however, considered Morris's obesity in making his RFC determination. *Id.*

Accordingly, the record contains sufficient evidence for the ALJ to base his finding that Morris's subjective complaints of the severity of his symptoms were not credible. The records Morris cites establish that he has medical conditions that would cause some amount of pain and discomfort. But those records alone do not prove that his symptoms are so severe that they rise to the level of a disability. Therefore, the Court finds that the ALJ's determination that Morris's subjective statements were inconsistent with the objective medical evidence was supported by substantial evidence.

Second, Morris alleges that the ALJ did not give evidentiary weight to any prior administrative medical findings or medical opinions, including from state agency physician Dr. Krishna Reddy.

7

The current regulations followed by ALJs in reaching their decisions affirmatively disclaim any formal physician hierarchy. In conducting their analysis, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The regulations provide that an ALJ "will articulate how [they] considered the medical opinion(s) or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). The regulations further explain that the most important factors in the analysis are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ did not commit error in finding Dr. Reddy's opinion and prior findings persuasive. Put simply, the ALJ followed the relevant regulations and properly analyzed Dr. Reddy's findings and opinion under their terms. The ALJ explained that, based on his review of the objective medical evidence, Dr. Reddy's opinion was both supported by and consistent with the treatment records in this case. (Tr. 21). That is, under the two most important factors of the analysis, Dr. Reddy's opinion passed muster. Accordingly, the ALJ did not err in finding Dr. Reddy's opinion and prior findings persuasive.

Finally, Morris asserts that the ALJ erred by failing to give weight to the diagnoses, testing, and treatment of his treating physicians, Dr. Boyd and Dr. Pappas. This argument fails for three reasons. First, as discussed above, the ALJ conducted a thorough review of the treatment records of Dr. Boyd and Dr. Pappas and considered them closely in arriving at his RFC determination. Second, as explained above, the ALJ does not owe special weight to a treating physician's opinion. 20 C.F.R. §§ 404.1520c, 416.920c. Third, as the Commissioner points out in their brief, neither Dr. Boyd nor Dr. Pappas provided a medical opinion under the regulations.

A medical opinion, under the regulations, "is a statement from a medical source about what you can still do despite your impairment(s)". 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The opinion must say if the claimant has limitations or restrictions in one of four ways: (1) ability to perform physical demands of work activities; (2) ability to perform mental demands of work activities; (3) ability to perform other demands of work; or (4) ability to adapt to environmental conditions. *Id.* Put simply, neither Dr. Boyd nor Dr. Pappas provided a medical opinion as defined by the regulations. (Tr. 314-15, 319-22, 324-25). Accordingly, the ALJ did not err in failing to give weight to the opinions of Morris's treating physicians.

**B.  Morris is not entitled to relief on his claim that the ALJ failed to properly conduct a function-by-function assessment of Morris's physical capacity as required by SSR 96-8p.**

In essence, Morris's second claim is an argument that the ALJ did not properly conduct the RFC analysis in making his determination. Specifically, Morris argues that the ALJ did not adequately evaluate Morris's testimony and treatment records and failed to adequately articulate his RFC determination in the terms of SSR 96-8p. This argument fails for two reasons.

First, as explained at length above, the ALJ conduct a thorough review and examination of Morris's treatment and examination records. The ALJ discussed the records at length and evaluated them carefully in conducting his RFC analysis. And, contrary to Morris's assertions, the ALJ's decision to discount Morris's subjective complaints of his symptoms' limitations was supported by substantial evidence. In short, as explained at length in this memorandum opinion, the ALJ considered the record evidence and supported his decision to discount Morris's testimony with substantial evidence.

Second, the ALJ supported his RFC determination with substantial evidence. Most importantly, the ALJ explicitly discussed Morris's exertional capacities and found that the objective evidence did not support limitations. (Tr. 18). The ALJ then supported that finding with a plethora of objective medical evidence. (Tr. 19-21). As explained at length above, the ALJ supported his RFC determination with substantial

evidence through objective medical evidence and the opinion of Dr. Reddy. And because the ALJ's RFC determination was, as this Court has already found, supported by substantial evidence, he was not required to explicitly discuss each and every exertional demand in the definitions of the regulations. SSR 83-10; *see also, e.g., Castel v. Astrue*, 355 Fed. Appx. 260, 263 (11th Cir. 2009). Because the ALJ's decision was "sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole", *Castel*, 355 Fed. Appx. at 263 (citations omitted), the ALJ performed a proper RFC function analysis based on substantial evidence. Accordingly, the ALJ did not commit reversible error.

## V.   Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. A final order will be entered separately.

**DONE** and **ORDERED** January 31, 2022.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE